**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

DAVID W.G.,                                        Case No: 19-cv-2007 (NEB/ECW)

    Plaintiff,

    v.                                        **REPORT AND RECOMMENDATION**

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

This matter is before the Court on Plaintiff David W.G.'s ("Plaintiff") Motion for Summary Judgment (Dkt. 22) and Defendant Commissioner of Social Security Andrew Saul's ("Defendant") Motion for Summary Judgment (Dkt. 27). Plaintiff is seeking judicial review of Defendant's final decision to deny Plaintiff's request that his overpayment be waived because recovery of Plaintiff's overpayment would not defeat the purpose of Title II of the Social Security Act ("the Act"). This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, the Court recommends that Plaintiff's Motion be denied, and Defendant's Motion be granted.

## I.    PROCEDURAL BACKGROUND

Plaintiff applied for benefits on May 15, 1996 and began receiving disability

insurance benefits under Title II of the Act as of September 1996. (R. 51, 57-59).[1]

Following a review of Plaintiff's case, the Commissioner determined in August 2007 that Plaintiff's disability had ended after he returned to work performing substantial gainful activity and that he was not entitled to the $95,380.00 in overpayment in benefits that he and two of his children had been paid since September 2000. (R. 616 (Notice of Disability Cessation); R. 621 (overpayment of $64,394 as to Plaintiff); R. 622 (overpayment of $15,493 as to first child); R. 623 (overpayment of $15,493 as to second child).) A Notice of Disability Cessation, dated August 5, 2007, notified Plaintiff that he was not entitled to disability benefits subsequent to September 2000. (R. 616.)

Plaintiff filed a request for waiver of the overpayment on February 28, 2008. (R. 624-31.) Plaintiff's waiver request was denied initially and on reconsideration. (R. 51, 633, 637.) Plaintiff then requested on July 7, 2008 an administrative hearing before an Administrative Law Judge regarding his request for a waiver of the overpayment. (R. 640.) Administrative Law Judge Peter C. Erickson ("ALJ") conducted a hearing on November 21, 2008 regarding Plaintiff's waiver request, at which Plaintiff testified. (R. 51, 549.) Prior to the hearing, Plaintiff completed another Request for Waiver of Overpayment form. (R. 675-82.)

The ALJ issued a decision on February 5, 2009 denying Plaintiff's waiver request. (R. 51-53.) As part of his decision, the ALJ first determined that due to Plaintiff's work, he and his two children were overpaid $95,380.00 for the months of September 1997

---

[1]    The Social Security Administrative Record ("R.") is available at Dkt. 17.

through September 2007.  (R. 52.)  The overpaid amount attributed to Plaintiff was
$64,394.00, with the remaining amount being attributable to his children.  (R. 52.)

The ALJ then determined that Plaintiff "was without fault in causing or accepting
the overpayment (20 CFR 404.507)."  (R. 52.)  However, the ALJ determined that the
"[r]ecovery of the overpayment is not waived.  (20 CRF [sic] 404.506 and 404.509)."  (R.
53.)  In making this finding, the ALJ concluded as follows:

> While the claimant's earnings and expenses are essentially equal, he has a
> number of assets (e.g., annuity, real property, and stocks) that could be sold
> to repay the overpayment.  He estimated the value of his assets to be more
> than $100,000.  (Exhibits 22 p.4-7)  There is no evidence that his position
> would be changed for the worse (i.e., unable to pay for everyday living
> expenses) if he repaid the overpayment as he still would have some
> remaining assets in addition to income from his business.

(R. 53.)

After Plaintiff requested review, the Appeals Council granted Plaintiff's request
with regard to the benefits paid to Plaintiff's children and waived the $30,986.00
combined overpayment to the two of them on December 17, 2010.  (R. 40-42.)

The Appeals Council separately denied Plaintiff's request for review regarding the
remaining $64,394.00 overpayment paid to him:

> We found that this information does not provide a basis for changing the
> Administrative Law Judge's decision.  Although your attorney contended in
> part that your annuity should not be considered an asset because you do not
> have access to the funds therein, you reported on two separate occasions that
> the annuity constituted an asset to you.  In addition, the POMS citation he
> provided relates to trust funds as opposed to annuities.  Furthermore, no
> evidence has been submitted that confirms that you do not have access to the
> funds contained in the annuity.
>
> Your attorney also argued that the stocks and property owned by you
> should not be considered in determining your ability to make repayment

3

because they cannot be liquidated.  Again, no evidence has been submitted
in support of that argument.  The record does not contain any allegation that
you attempted to sell the acres of farm land that you own with your sister
and brother-in-law, let alone that you are unable to sell that property.
While you did allege that you tried unsuccessfully to sell four acres of
vacant land, no evidence was submitted concerning the specifics of any
proposed sale.  The evidence of record shows that you do have the financial
ability to make repayment of the overpaid monies.

(R. 32-35.)

On May 23, 2019, the Appeals Council transmitted its December 17, 2010 denial

for review, but gave Plaintiff 60 days from the date of the letter to file a civil suit, which

made the determination of the ALJ the final decision of the Commissioner.[2]  (R. 2.)

Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g) with respect to the

waiver of overpayment.

The Court has reviewed the entire administrative record, giving particular

attention to the facts and records cited by the parties.  The Court will recount the facts of

record only to the extent they are helpful for context or necessary for resolution of the

specific issues presented in the parties' motions.

## II.    <u>RELEVANT RECORD</u>

On February 29, 2008, Plaintiff filled out a Request for Waiver of Overpayment

Recovery.  (R. 624-31.)  Plaintiff represented that he and his children had $3,622 in cash

on hand in either checking or savings accounts.  (R. 627.)  Plaintiff also had $25,000 in

---

[2]    According to the Commissioner, due to an administrative oversight, the Appeals
Council apparently failed to send the December 17, 2010 denial notice to Plaintiff and his
counsel until May 23, 2019, at which time the Appeals Council also granted Plaintiff a
new 60-day time period for filing a civil action.  (*See* Dkt. 28 at 3.)

stocks and was receiving $60 per month from the stocks in dividends. (R. 627.) Further, Plaintiff had an annuity from an inheritance with a value of $107,000. (R. 627.) In addition, Plaintiff represented that he owned a number of parcels of real estate: (1) as the half owner of 50 acres of farmland with a market value of $165,000, which generated $600 per year in rent; (2) a 37-acre parcel with a value of $89,000 that Plaintiff had donated to the Minnesota Land Trust; (3) a 4-acre vacant lot with a market value of $50,000; and (4) an apartment at his homestead that was generating $850 per month in rent. (R. 627.) Plaintiff represented that he had not sold, lent, or given away any of his property or assets after being notified of the overpayment. (R. 626.)

According to Plaintiff, his monthly take-home pay, representing pay from his employment and rents, totaled $2,166, of which $900 was rent paid to him. (R. 628.) Plaintiff also noted that some months his work pay was zero. (R. 628.) His monthly expenses totaled $2,784. (R. 629.) When asked to explain how he was paying his bills given that his expenses exceeded his income, Plaintiff represented that he had to borrow from his second mortgage's equity and had to sell off some stocks. (R. 630.) When asked if there was any reason why he could not convert any of his assets into cash, Plaintiff explained that he was trying to "have something" when he retired or when he could not work at all due to being paralyzed. (R. 630.)

On November 18, 2008, Plaintiff filled out a second Request for Waiver of Overpayment Recovery. (R. 675-82.) Plaintiff represented that he and his children had $3,626 in cash on hand in either checking or savings accounts. (R. 678.) Plaintiff also had $9,665 in stocks. (R. 678.) Further, Plaintiff had an annuity from an inheritance

with a value of $75,000. (R. 678.) In addition, Plaintiff represented that he still owned a number of parcels of real estate: (1) as the half owner of 50 acres of farmland with a market value of $165,000, which generated $750 per year in rent; (2) a 37-acre parcel with a value of $89,000 that Plaintiff had donated to the Minnesota Land Trust; and (3) a 4-acre vacant lot with a market value of $50,000, which was for sale. (R. 678.) Plaintiff claimed that he had not sold, lent, or given away any of his property or assets after being notified of the overpayment. (R. 677.)

According to Plaintiff, his monthly take-home pay, representing pay from his self-employment, totaled $1,266, which varied with his business. (R. 679.) He also represented that he was receiving $1,412 a month in rent from renting an apartment and office on his homestead. (R. 679.) His monthly expenses totaled $ 2,725.[3] (R. 680-81.) When asked to explain how he was paying his bills given his expenses exceeded his income, Plaintiff represented that he had to sell off some stocks. (R. 681.) When asked if there was any reason why he could not convert any of his assets into cash, Plaintiff again explained that he was trying to "have something" for when he retired or when he could not work at all due to being paralyzed. (R. 681.)

The record contains no evidence regarding the veracity of Plaintiff's income, costs, or assets in 2008.

During the November 21, 2008 hearing before the ALJ, Plaintiff testified that his

---

[3]    Plaintiff initially had stated that his expenses were $2,625, but it appears that he included an additional $100 per month in property taxes on other properties. (R. 680-81.) The Court also notes that his $2,725 total expenses included $100 a month in donations to charity. (R. 680.)

business involved the manufacture and selling of a plastic product across the country. (R. 561-62.) The income from his business varied, but he testified that he was averaging approximately $1,266 of income a month. (R. 563.) The $1,412 monthly rental income was a fixed amount. (R. 564.)

With respect to his real estate assets, Plaintiff testified that he still had ownership rights to the parcel that he donated to the Minnesota Land Trust and could sell the property, but that the development rights were limited, which is why the value of the property was reduced. (R. 566-67.) As to the farm parcel, Plaintiff and his relatives owned the entire parcel as a tenants-in-common, and he had a 50 percent interest in the property. (R. 567-68.) Plaintiff testified that he did not know whether his relatives would be interested in purchasing his interest in the property. (R. 571.) The third parcel with a value of $50,000 was vacant and unused. (R. 568.) According to Plaintiff, he had hoped to sell this 4-acre parcel, but it had been for sale for a year with no interest given the status of the real estate market. (R. 570-71.)

Plaintiff further testified that his annuity inheritance, comprised of mutual funds, had gone down in value because of the status of the stock market in 2008, although it appears what he was referring to was the decrease from $107,000 in February 2008 to $75,000 as of November 18, 2018. (R. 568; *see* R. 627, 678.) Plaintiff represents that he had access to the funds, but that there would be unspecified "significant penalties and things associated with liquidating it." (R. 584.)

## III.   LEGAL STANDARD

Judicial review of an ALJ's denial of benefits is limited to determining whether

substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018), or whether the ALJ's decision results from an error in law. *Nash v. Comm'r, Soc. Sec. Admin.* 907 F.3d 1086, 1089 (8th Cir. 2018). As recently defined by the Supreme Court:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means— and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

"[T]his court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Id.*; *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (marks and citation omitted) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984) ("An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.").

## IV.    <u>ANALYSIS</u>

Plaintiff sets forth several arguments in his request for reversal or remand. Given

that the Commissioner has determined that he is not at fault in creating the overpayment, Plaintiff argues that once the ALJ concluded that Plaintiff's current income and expenses were equal, the regulatory requirements were met, and Plaintiff was entitled to a waiver of the overpayment under 20 C.F.R § 404.508(b). (Dkt. 23 at 7.) In addition, Plaintiff argues that the ALJ erred in considering his assets, as there is no requirement in 20 C.F.R. § 404.508 that an individual must sell off his possessions. (*Id.* at 23 at 7-8.) Further, Plaintiff asserts that given that the ALJ found that his income and expenses were equal, requiring him to sell off his real estate interests would deprive him of rental income, presumably relating to the farmland. (*Id.* at 8.) Based on this, Plaintiff contends that the ALJ failed to resolve the conflict this deprivation of rental income creates, given that it would mean that he would no longer have enough income to meet his ordinary and necessary living expenses. (*Id.*) Finally, Plaintiff asserts that the ALJ's conclusion that he could sell his property is not supported by the evidence of record, given that the only evidence in the record regarding the possible sale of his land is his testimony that he has been unable to do so.[4] (*Id.*)

The Commissioner counters in part as follows:

Plaintiff first incorrectly suggests that an overpayment may be recovered only from an individual's income and not his other assets. Pl.'s Br. at 7-8. Plaintiff is wrong, and his reliance on 20 C.F.R. § 404.508(b) is misplaced.

---

[4]    The Court notes that Plaintiff made no argument with respect to his present ability to pay the overpayment given the fact that the Appeals Council took over ten years to transmit its denial. Indeed, Plaintiff represented that the "delay is immaterial to the issues involved[.]" (Dkt. 23 at 5 n.3.) The Court therefore does not consider Plaintiff's current ability to pay. *See Hacker v. Barnhart*, 459 F.3d 934, 937 n.2 (8th Cir. 2006) ("A party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue.") (quotation omitted).

The Act explicitly requires the Commissioner to recover overpayments, and does not restrict the Commissioner to recovering these overpayments from a person's income. 42 U.S.C. § 404(a)(1). In fact, the Act explicitly instructs the Commissioner to recover overpayments from any tax refund owed by the Department of the Treasury and the person's estate. *Id.* at § 404(a)(1)(A). In relying on the language he cites from 20 C.F.R. § 404.508(b), Plaintiff overlooks the clear language in 20 C.F.R. § 404.508(a) expressly addressing a person's "income or financial resources." Plaintiff's overly-broad interpretation of the language he cites would preclude recovery of a $50 overpayment from an individual with millions of dollars in other assets simply because they spent as much as they made each month. Plaintiff cites no support for such an interpretation, which is clearly inconsistent with the Act's requirement that the Commissioner recover an overpayment from other sources such as an individual's tax refund or estate.

(Dkt. 28 at 6-7.)

Further, the Commissioner takes issue with Plaintiff's argument that selling his farm property would mean he would lose his rent and preclude him from meeting his ordinary expenses on the grounds that Plaintiff ignores that the farm property was worth $165,000 and further ignores his other assets (excluding his bank accounts), including: (1) stocks valued at $9,665; (2) an inherited annuity valued at $75,000.00; (3) 37 acres of vacant land valued at $89,000; and (4) 4 acres of vacant land valued at $50,000. (*Id.* at 7.) According to the Commissioner, even if Plaintiff's bank accounts, the farm property at issue, and his vehicles are not considered, Plaintiff's remaining assets amount to $223,665—approximately three-and-one-half times his remaining $64,394.00 overpayment debt. (*Id.* at 7-8.) Lastly, the Commissioner argues that it is Plaintiff's burden, beyond his subjective statements, to demonstrate that he has been unable to sell his assets. (*Id.*)

In his reply, Plaintiff clarified that he:

> did not "incorrectly [suggest] that an overpayment may be recovered only from an individual's income and not his other assets." Defendant's Memorandum, p. 6. [Plaintiff] instead argued that all of his income was, as the Administrative Law Judge found, required to meet his current ordinary and necessary living expenses. As such, the Commissioner's own regulation directs waiver of the overpayment.

(Dkt. 30 at 4.) Plaintiff also argued that recovery of the overpayment in this instance would defeat the purpose of Title II of the Social Security Act given that the Commissioner is asking him to pay back an overpayment constituting 424% of his yearly income. (*Id.*)

Under the relevant statutory authority, "[i]n any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." 42 U.S.C. § 404(b)(1); *see also* 20 C.F.R. § 404.506(a). Here, the parties do not contest the fact that Plaintiff was without fault with respect to the overpayment. (R. 52.) A party seeking a waiver may do so under the procedures set forth in 20 C.F.R. § 404.506,[5] "and in doing so, bears the burden of proof" with respect to the issue of whether recovery would defeat the purpose of Title II or would be against equity and good conscience. *See Rodysill v. Colvin*, 745 F.3d 947, 949 (8th Cir. 2014) (citing *Sipp v. Astrue*, 641 F.3d 975, 981 (8th Cir. 2011)). Under the Commissioner's regulations, "[r]ecovery of an overpayment is against equity and good conscience" when

---

[5]    The Court notes that § 404.506 has been recently modified with respect to situations dealing with COVID-19, which are not applicable to this case.

an individual:

(1)    Changed his or her position for the worse (Example 1) or relinquished a valuable right (Example 2) because of reliance upon a notice that a payment would be made or because of the overpayment itself; or

(2)    Was living in a separate household from the overpaid person at the time of the overpayment and did not receive the overpayment (Examples 3 and 4).

20 C.F.R. § 404.509(a).  An individual's "financial circumstances are not material to a finding of against equity and good conscience."  *Id.* § 404.509(b).  Here, Plaintiff does not assert that waiver should be granted because he changed his position for the worse or relinquished a valuable right because of his reliance on the overpayment, or that he was living in a separate household from the overpaid person (obviously because he is the overpaid person).  Indeed, Plaintiff's argument is focused on his financial circumstances (Dkt. 23 at 7-8), which are not to be considered under § 404.509(b).

This leaves the determination of whether recovery would defeat the purpose of Title II.  Under the relevant regulations:

Defeat the purpose of title II, for purposes of this subpart, means defeat the purpose of benefits under this title, i.e., to deprive a person of income required for ordinary and necessary living expenses.  **This depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs**.  An individual's ordinary and necessary expenses include:

(1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e.g., life, accident, and health insurance including premiums for supplementary medical insurance benefits under title XVIII), taxes, installment payments, etc.;

(2) Medical, hospitalization, and other similar expenses;

12

(3) Expenses for the support of others for whom the individual is legally responsible; and

(4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

(b) When adjustment or recovery will defeat the purpose of title II. **Adjustment or recovery will defeat the purposes of title II in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses**.

20 C.F.R. § 404.508 (emphasis added).

The procedures used by the Commissioner to process claims for Social Security benefits, which are termed the Commissioner's Program Operations Manual System ("POMS"), provide the following instructions with respect to the consideration of assets in determining whether requiring repayment of an overpayment would defeat the purposes of Title II:[6]

4. Assets

A person's entire financial situation must be evaluated when making a defeat the purpose finding. Defeat the purpose may be found if recovery reduces assets to below:

•$3000 for a person without dependents, or

---

[6]    "Although POMS guidelines do not have legal force, and do not bind the Commissioner, this court has instructed that an ALJ should consider the POMS guidelines." *Hesseltine v. Colvin*, 800 F.3d 461, 465 (8th Cir. 2015) (cleaned up). "As an interpretation of a regulation promulgated by the Commissioner, the POMS control unless they are inconsistent with the regulation or plainly erroneous. *Rodysill*, 745 F.3d at 950-51 (examining the POMS with respect to 20 C.F.R. § 404.508); *see also Reutter v. Barnhart*, 372 F.3d 946, 951 (8th Cir. 2004). The Court also notes that Plaintiff relied on the POMS in his argument to the Appeals Council. (R. 32-35.)

•$5000 for a person with one dependent, plus $600 for each additional dependent.

Assets are available to repay an overpayment to the extent that their total value exceeds the above amounts. If income does not exceed adjusted expenses, recovery will defeat the purpose if recovery would cause assets to be reduced below these amounts.

POMS GN 02250.115 Application of Defeat the Purpose Provisions (*available at*

https://secure.ssa.gov/apps10/poms.nsf/lnx/ 0202250115) (last visited on January 24,

2021).

With respect to assets and waiver, POMS further explains:

A. Policy

Assets are a financial resource which may be liquidated to repay an overpayment. Assets resulting from pending inheritance proceedings are considered part of a person's assets if the person anticipates receipt within 6 months of requesting waiver.

B. Procedure

1. Not an Asset

a. Do not include the value of household furnishings, wearing apparel, burial plot or prepaid burial contract, family automobile or family home.

b. Do not include a vehicle needed for the support of a handicapped family member. In order for a vehicle to meet this exclusion, it must provide support that the family vehicle cannot provide. It must have been purchased for and be used for the transportation of the handicapped person.

c. Do not include any asset which is generating income needed to meet ordinary and necessary living expenses.

d. IRA's and Keough Plan funds are not assets when the fund is income producing (i.e., the person is receiving

income from it).  Otherwise, they should be considered an asset.

2. Assets Not Available

a. If the person is the beneficiary of a trust fund, ascertain if he/she has access to the funds.  Consider the trust fund as an asset unless the funds are not available to the person (e.g., the person cannot use the principal until he/she attains age 25 or the trust fund is comprised solely of the proceeds of VA funds).  If the availability would preclude waiver, refer the matter to the Regional Attorney with a full explanation of the facts to determine if the trust fund is liquid.

b.  If the person has joint ownership of real property, do not include the value of his/her share of the asset if the other parties will not agree to liquidate the asset.

Assets are available to repay an overpayment to the extent that their total value exceeds the above amounts. If income does not exceed adjusted expenses, recovery will defeat the purpose if recovery would cause assets to be reduced below these amounts.

POMS GN 02250.125 Assets – Waiver (*available at* https://secure.ssa.gov/apps10/ poms.nsf/lnx/0202250125) (last visited on January 24, 2021).

Given the plain language of the regulation requiring the consideration of an individual's "income or financial resources" and the POMS guidelines, the Court finds that the Commissioner did not err by considering Plaintiff's assets in addition to his income in determining whether repayment of an overpayment would defeat the purposes of Title II.  Indeed, courts that examined this issue have consistently concluded that assets may be considered when determining whether a person would be deprived of income required for ordinary and necessary living expenses.  *See, e.g.*, *Rodysill*, 745 F.3d at 950

(citing to POMS GN 02250.125 and noting that a home is not a liquifiable asset that is relevant to a plaintiff's ability to repay an overpayment); *Coulston v. Apfel*, 224 F.3d 897, 901 (8th Cir. 2000) (citing to *Banuelos v. Apfel*, 165 F.3d 1166, 1170-71 (7th Cir. 1999), for the proposition that claimant's assets must be considered in determining whether repayment defeats purpose of social security); *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 392 (6th Cir. 2005);[7] *Banuelos*, 165 F.3d at 1171 (citation omitted) ("Banuelos fails

---

[7]    The Sixth Circuit in *Valley* held as follows:

Valley argues that the assets in one of his accounts, totaling $154,072, were generated from his personal injury lawsuit and earmarked for his "expensive and necessary present and future medical expenses," and that therefore the ALJ and district court erred in considering these assets in their calculations. Valley cites no law for this argument, and we are not persuaded by it.  First, Valley does not explain why the origin of his assets is relevant for determining the sufficiency of those assets for repayment.  Second, the fact that particular assets are used to cover Valley's expenses does not mean that they should be disregarded in evaluating whether Valley can afford to repay the overpayment; on the contrary, such funds must be considered to determine whether Valley "needs substantially all his current income . . . to meet current and ordinary living expenses."  *See* 20 C.F.R. § 404.508(b). Finally, Valley's argument that the ALJ should be required to ignore any assets that a claimant has designated for future use is unpersuasive.  Any speculation regarding Valley's future needs would not outweigh the substantial evidence supporting the ALJ's conclusion that Valley has sufficient means to repay the Administration.

* * *

Furthermore, we do not view the district court's consideration of Valley's real property to be in error.  Valley argues, again without citation to law, that consideration of these assets is improper because: (i) his second home was purchased to house his sister nearby so that she could assist in his daily care; and (ii) the district court did not consider how he would pay back any home equity loan he took out on the premises.  **Valley does not elaborate on why these factors make consideration of the home equity improper.  We infer that Valley could not easily sell either of his residences.  Nevertheless,**

to recognize that 20 C.F.R. § 404.508(a) requires that 'income or financial resources' be considered in the determination of whether a compelled recoupment 'defeats the purpose' of the Social Security Act. 'Financial resources' include, among other things, an individual's savings, interest income, and equity in real estate."), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); *Shelton v. Berryhill*, No. 4:16-CV-00400-JTR, 2017 WL 4621801, at *2 (E.D. Ark. July 20, 2017) (considering a number of assets including stocks and concluding that "[c]onsidering the sizable assets at Shelton's disposal, it does not appear that he would be deprived of the income required to meet his ordinary and necessary living expenses," and concluding "[t]hus, substantial evidence supports the Commissioner's conclusion that recovery of overpayment would not defeat the purpose of Title II"), *aff'd sub nom. Shelton v. Comm'r, Soc. Sec. Admin.*, 716 F. App'x 574 (8th Cir. 2018); *Audet v. Astrue*, No. 4:08CV3220, 2009 WL 1664598, at *5 (D. Neb. June 11, 2009) ("The Court has considered Audet's lack of assets and her monthly expenses ($2,506.00 at the time of the hearing), and concludes that if she were required to use any of her monthly income to repay the SSA, she would be deprived of funds necessary to meet ordinary and necessary living expenses."); *Casey v. Astrue*, No. 4:08CV3028, 2009 WL 1554217 at *5 (D. Neb., June 03, 2009) (affirming the ALJ's

---

the law does not require the ALJ to ignore the value of a claimant's house or other non-liquid assets in evaluating whether a claimant can afford repayment, and we decline to create such a polic**y**. In addition, if Valley chooses to take out a home equity loan, the law does not require either the Administration or the courts to advise Valley on that loan.

427 F.3d at 392 (emphasis added).

denial of waiver where after repayment, considering the IRAs that the plaintiff owned, the "plaintiff would be left with $9,898.75 in available assets").

If the Court were to accept Plaintiff's interpretation that the Commissioner is only allowed to consider income, where all of his income was required to meet his current ordinary and necessary living expenses, when determining whether requiring repayment of an overpayment would defeat the purposes of Title II, such an interpretation would render superfluous the language in 20 C.F.R. § 404.508 that a claimant's other financial resources (other than income) are to be considered. *See Solis v. Summit Contractors, Inc.*, 558 F.3d 815, 823 (8th Cir. 2009) ("We also should 'avoid a regulatory construction that would render another part of the same regulation superfluous.'") (cleaned up) (quoting *United States v. Stanko*, 491 F.3d 408, 413 (8th Cir. 2007)). Indeed, it appears that Plaintiff is attempting to put the proverbial cart before the horse. Relying on paragraph (b), he asserts that the inquiry ends when a claimant's employment and rent income equals his expenses in determining whether recovery will defeat the purposes of benefits under of Title II under 20 C.F.R. § 404.508(b). However, such an interpretation would ignore the fact that § 404.508 first considers in paragraph (a) whether repayment would "deprive a person of income required for ordinary and necessary living expenses," 20 C.F.R. § 404.508(a), and, as set forth above, that determination "depends upon whether the person has an income **or** financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs," *id.* In other words, the regulation requires the Commissioner to look at all resources in determining whether a claimant can meet their ordinary and necessary needs. Under

18

Plaintiff's interpretation, making a hypothetical person pay back a $60,000 overpayment would defeat the purposes of Title II even if the individual owned $10 million stock when their income was $500 and their expenses the same amount. Such an interpretation is the antitheses of the purposes of Title II. Instead, as laid out by § 404.508, all of a claimant's financial resources must be considered to determine whether he can meet his current ordinary and living expenses.

Here, even if (for argument's sake) the Court does not consider the farmland generating the rental income and if (for argument's sake) the Court assumed Plaintiff was unable to sell any of his real estate,[8] Plaintiff still does not account for the value of the mutual funds in his annuity and his stocks, where, as of November 18, 2008, the value of his annuity alone was $75,000 and could easily cover the $64,394 overpayment.[9] Plaintiff also fails to address the additional $9,665 in stock assets he had available to

---

[8] Plaintiff contends his testimony that he was unable to sell the 4-acres of land is evidence that he could not sell any of his land. (Dkt. 23 at 8.) He cites no authority that supports his contention that an inability to sell a single vacant parcel (without any specific information as to the efforts to sell) should be evidence of an inability to sell farmland and the land for which he had donated development rights.

[9] The Court also concludes that even ignoring the farmland property, the ALJ properly considered Plaintiff's real estate assets in his determination. *See Banuelos*, 165 F.3d at 1171 ("'Financial resources' include, among other things, an individual's savings, interest income, and equity in real estate.") (citing *Milton v. Harris*, 616 F.2d 968, 974 (7th Cir. 1980)); *see also Valley*, 427 F.3d at 392. While Plaintiff argues that the ALJ failed to meet his burden to show that he could liquidate the equity in his inherited real estate, it is Plaintiff, not the ALJ, who bears the burden to show the payment would be contrary to the purposes of Title II and provide proof of his claimed inability to sell the properties at issue. *See Rodysill*, 745 F.3d at 949.

address the overpayment.[10]  In other words, Plaintiff has not met his ultimate burden to show that he would be deprived of the income or financial assets required to meet his ordinary and necessary living expenses if he was required to pay back the $64,394 overpayment.

In sum, the Court finds that the ALJ's decision that requiring repayment of an overpayment would not defeat the purposes of Title II is supported by substantial evidence in the record as a whole.

## V.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.    Plaintiff David W.G.'s Motion for Summary Judgment (Dkt. 22) be **DENIED**; and

2.    Defendant Commissioner of Social Security Andrew Saul's Motion for Summary Judgment (Dkt. 27) be **GRANTED**.

DATED: January 25, 2021                *s/Elizabeth Cowan Wright*
                                       ELIZABETH COWAN WRIGHT
                                       United States Magistrate Judge

---

[10]    The Court notes that while the February 2008 waiver request form represented that Plaintiff's stocks generated dividends, the more recent November 2008 form noted no dividend or other income generated from the stock asset.  (R.  627, 678.)

### NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).